SONIA R. CARVALHO (SBN 162700)
CITY ATTORNEY
LAURA A. ROSSINI (SBN 223471)
CHIEF ASSISTANT CITY ATTORNEY
JOHN M. FUNK (SBN 204605)
SR. ASSISTANT CITY ATTORNEY
CITY OF SANTA ANA
20 CIVIC CENTER PLAZA M-29
P.O. BOX 1988
SANTA ANA, CALIFORNIA  92702
TELEPHONE:  (714) 647-5201
FACSIMILE:  (714) 647-6515
EMAIL:  lrossini@santa-ana.org
EMAIL:  jfunk@santa-ana.org

Attorneys for Defendant
CITY OF SANTA ANA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SANTA ANA, a charter municipality,<br><br>　　　　Defendant. | Case No.:<br><br>**DEFENDANT CITY OF SANTA ANA'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441**<br><br>[Filed concurrently with Civil Cover Sheet, Certification and Notice of Interested Parties] |

## TO THE CLERK OF THE ABOVE-ENTITLED COURT:

**PLEASE TAKE NOTICE** that the City of Santa Ana removes this action, entitled *CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization, v. CITY OF SANTA ANA, a charter municipality*, which is currently pending in the Superior Court of California for the County of Orange, Case No.

Case No. 30-2021-01189627-CU-MC-CXC, to the United States District Court for the Central District of California, Southern Division.   This Court has original jurisdiction over this action under 28 U.S.C. § 1331 on the grounds that a federal question is raised by certain claims.

## BACKGROUND

1.     The California Grocers Association ("CGA") filed this lawsuit on March 16, 2021.

2.     CGA served Santa Ana with its Complaint on March 24, 2021. As required by 28 U.S.C. § 1446(a), a true and correct copy of the Summons and Complaint are attached as Exhibit A, and all other process, pleadings, and orders in this action are attached as Exhibit B.   A true and correct copy of the proof of service filed by CGA is attached as Exhibit C.

## THE PARTIES

3.     Plaintiff CGA is a California non-profit organization, headquartered in Sacramento.  *See* Exhibit A, Complaint, ¶ 10.

4.     Defendant City of Santa Ana is a charter city and municipal corporation organized and existing under the Constitution and laws of the State of California.

## THE COMPLAINT

5.     On behalf of its members, who are grocery store employers, CGA's Complaint raises claims related to Santa Ana's urgency ordinance establishing premium pay and associated labor protections for grocery and retail pharmacy employees working in Santa Ana, as adopted on March 2, 2021 ("Ordinance"). *See generally* Exhibit A, Complaint.

6.     A full copy of the Ordinance was attached to CGA's Complaint as Exhibit A thereto.

7.     CGA's specific causes of action are the following:

a.   Declaratory and injunctive relief based on preemption by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*

b.   Declaratory and injunctive relief based on the Equal Protection Clause of the United States Constitution.

c.   Declaratory and injunctive relief based on the Equal Protection Clause of the California Constitution.

d.   Declaratory and injunctive relief based on the Contracts Clause of the United States Constitution.

e.   Declaratory and injunctive relief based on the Contracts Clause of the California Constitution.

*See* Exhibit A, Complaint, ¶¶ 20-45.

8.   On the above grounds, CGA seeks to enjoin operation of the Ordinance. *See* Exhibit A, Complaint, Prayer for Relief.

9.   The Ordinance is currently in effect and is scheduled to expire on its own on June 30, 2021.

## GROUNDS FOR REMOVAL AND JURISDICTION

10.   Under 28 U.S.C. 1446(b), this removal is timely because it is filed within 30 days of the date Santa Ana was served with the Complaint (March 24, 2021).

11.   This Court has original jurisdiction over this action under 28 U.S.C. § 1331 in that a federal question is raised by three of the above causes of action in the Complaint.

12.   Removal of the entire action is appropriate under 28 U.S.C. 1441(a) and (c).

/ / /

/ / /

/ / /

/ / /

1

## **RESERVATION OF RIGHTS**

2      13.    By filing this Notice of Removal, Santa Ana does not waive its right
3 to object to jurisdiction or venue, and specifically reserves the right to assert any
4 defenses and/or objections to which it may be qualified to assert.

5      14.    If any question arises as to the propriety of the removal of this action,
6 Santa Ana requests the opportunity to submit any such further evidence and to
7 conduct discovery in support of its position that this matter is removable.

8

9                                      * * * * *

10

11      WHEREFORE, Santa Ana removes this action from the Superior Court of
12 the County of Orange, in the State of California, bearing Case No. 30-2021-
13 01189627-CU-MC-CXC, to this Court.

14

15 Dated:  April 15, 2021          CITY OF SANTA ANA
16                               Sonia R. Carvalho, City Attorney

17

18                         By: _Laura A. Rossini_
19                            Laura A Rossini
20                            Chief Assistant City Attorney

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL BY DEFENDANT CITY OF SANTA ANA

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
City of Santa Ana, a charter municipality

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
California Grocers Association, a California non-profit organization

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Orange County Superior Court, Central Justice Center, 700 Civic Center Drive West, Santa Ana, CA 92701

**CASE NUMBER:** *(Número del Caso):*
30-2021-01189627-CU-MC-CXC
Judge Randall J. Sherman

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William F. Tarantino, MORRISON & FOERSTER LLP, 425 Market St., San Francisco, CA 94105, (415) 268-7000

DATE:
*(Fecha)* 03/16/2021    DAVID H. YAMASAKI, Clerk of the Court    Clerk, by *(Secretario,* Georgina Ramirez    , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

WILLIAM F. TARANTINO (CA SBN 215343)
WTarantino@mofo.com
KWAN PARK (SBN 306719)
BPark@mofo.com
ROBERT SANDOVAL (SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Assigned for All Purposes
Judge Randall J. Sherman
CX-105

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SANTA ANA, a charter municipality<br><br>Defendant. | Case No. 30-2021-01189627-CU-MC-CXC<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff California Grocers Association ("Plaintiff" or "CGA") brings this action against Defendant City of Santa Ana ("Defendant" of "City") and alleges as follows in this Complaint for declaratory and injunctive relief:

## INTRODUCTION

1.     At the onset of the COVID-19 pandemic, the State of California and various counties, cities, and other regulatory bodies throughout the state issued a series of emergency orders and regulations in an effort to stem the spread of the

virus and protect the public health and welfare. These early efforts—aimed at balancing the public's basic economic and social needs with a desire to minimize COVID morbidity and mortality—came at a steep price, especially for essential businesses, and the millions of employees and members of the public who rely on them.

2.      California grocers have stayed open to serve their communities since day one. They understand that defeating this pandemic requires extraordinary measures and have eagerly committed themselves to the task. Since March of 2020, California grocers of all sizes have established rigorous and science-driven safety measures, often at great expense, to adapt to this new environment and ensure that they operate in a safe and hygienic manner in order to help slow the spread of the virus, and protect their workers and the public.

3.      Grocers have implemented comprehensive safety measures for customers and employees and compensated frontline grocery employees for their extra efforts in a difficult environment.  Grocers have provided "appreciation pay," "hero bonuses," and "thank you pay" to reward their associates.  Additionally, in terms of employee support, grocers have offered COVID-19 testing to employees and provided emergency leave and paid time off to those affected by the virus or experiencing symptoms.

4.      For worker safety, grocers have provided supplies to employees including face masks and protective gear in addition to encouraging employees to stay home if feeling ill and implementing paid leave policies. Plexiglas shields, physical distancing measures, and contactless payment and delivery services have been implemented to protect employees.  Some of California's largest grocers such as Kroger and Albertsons joined the United Food and Commercial Workers International union just last year to urge federal and state governments to designate grocery store employees as emergency first responders.

5.  Yet on March 2, 2021, the City passed the Ordinance "Establishing Premium Pay and Associated Labor Protections for Grocery and Retail Pharmacy Workers Working in Santa Ana" ("Ordinance") which requires employers to pay a $4 per hour premium on whatever the employees existing wage is at the time of enactment, regardless of any existing bonus, incentive, or hero pay program that the employer may have in place.

6.  The Ordinance unreasonably singles out specific grocers, while ignoring employers or essential frontline workers outside the grocery industry. Plaintiff seeks a declaration that the law is invalid and unconstitutional, and an injunction halting any action to enforce the Ordinance on the grounds that it (1) is preempted by federal law regulating collective bargaining and unfair labor practices; (2) violates the equal protection and contracts clauses of the U.S. and California constitutions.

7.  An actual controversy has arisen between CGA and the City as to the legality and constitutionality of the Ordinance.  The controversy presented to this Court is ripe for adjudication and suitable for judicial determination.  The controversy is an existing legal dispute between the parties and is based on ongoing and prospective conduct.  There are no relevant or effective administrative remedies available to CGA or its members that would resolve this matter without judicial intervention.  As a result, CGA is entitled to declaratory relief under Code of Civil Procedure section 1060, and this matter is entitled to preference for trial setting in accordance with Code of Civil Procedure Section 1062.5.

**JURISDICTION AND VENUE**

8.  This Court has personal jurisdiction over the City by reason of City's presence in Orange County, California.

9.  Venue is proper in this Court pursuant to California Code of Civil Procedure § 394, as the City is situated in Orange County, California.

**PARTIES**

10.     Plaintiff California Grocers Association has served as the voice of the state's grocery community for over 120 years. As a nonprofit, statewide trade association, CGA's membership is comprised of over 300 retailers and approximately 150 grocery supply companies. As part of its mission, CGA has advocated on behalf of its member retailers on important policy issues. Headquartered in Sacramento, California, CGA brings this action on behalf of its members operating stores in the City of Santa Ana.

11.     Defendant, City of Santa Ana, is and at all relevant times has been a public entity duly organized and existing under and by virtue of the laws of the State of California as a charter municipality.

**FACTUAL BACKGROUND**

12.     California Grocers Association pursues this action on behalf of its members who are grocery store employers ("Members") because the employers who operate grocery stores in Santa Ana will suffer a direct and adverse impact from the application of the Ordinance, and thus would have standing to pursue these claims in their own right.  The policy and legal interest CGA seeks to protect is at the core of Plaintiff's mission, and the injunctive and declaratory relief sought does not require the participation of individual members.

13.     Several Members operate grocery stores in the City that employ members of a specific labor union, United Commercial Food Workers International, Local 324 ("UFCW 324"), and those employees are parties to collective bargaining agreements that govern the terms of their employment, including wage scales. Other Members operate grocery stores that do not employ unionized workers, but those employees are free to organize and select a collective bargaining unit, should they choose to do so.

14.     Members have suffered or will continue to suffer economic and non-economic harm as a result of the enactment of the Ordinance, and its

foreseeable consequences on union organizing, ongoing collective bargaining, and labor relations for both unionized and non-union grocery stores in the City of Santa Ana. Members are required to alter the wage scales and other terms of their existing collective bargaining agreements, regardless of any additional hero pay, bonuses, or other non-monetary compensation provided to their employees to ease the burden of the COVID-19 pandemic.

15.    By design, the Ordinance picks winners and losers.  It singles out large grocery companies with unionized workforces (i.e., UFCW 324's members) without providing any reasonable justification for the exclusion of other employers or frontline retail workers. The Ordinance arbitrarily and improperly targets certain grocery store businesses in Santa Ana for disparate treatment while not requiring the same commitments from similarly situated businesses, or conferring *any* benefits on similarly situated employees.  There is no support for any of the City's statements that the Premium Pay will protect public health, address economic insecurity, and promote job retention.

## **THE ORDINANCE**

16.    The Ordinance Establishing Premium Pay and Associated Labor Protections for Grocery and Retail Pharmacy Workers Working in Santa Ana is attached hereto as **Exhibit A**.  It applies only to grocery stores with over 10,000 square feet that devote 70% or more of its sales floor area to retailing a general range of food products, or corporate or chain retail pharmacies that dispense medications to the general public. Section 2.

17.    Grocery stores meeting this minimum threshold of employees are required to provide each employee with premium pay consisting of an additional four dollars ($4.00) per hour for each hour worked.  Section 2.  The Ordinance requires hazard pay to be paid for a minimum of 120 days from the effective date of the Ordinance.  Section 2.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    18.    The Ordinance takes effect immediately and prohibits reducing a
2  grocery employee's compensation or limiting a grocery employee's earning
3  capacity for exercising any rights protected under the Ordinance. Section 3.

4    19.    Grocery stores are required to provide a notice of rights established
5  by the Ordinance.  Section 2.

**FIRST CAUSE OF ACTION**

**Declaratory and Injunctive Relief**

**(NLRA Preemption)**

9    20.    CGA incorporates herein by this reference the allegations contained
10 in Paragraphs 1 through 19, inclusive.

11    21.    Enacted in 1935, the National Labor Relations Act ("NLRA"), as
12 amended, 29 U.S.C. § 151, *et seq*., creates a uniform federal body of law governing
13 union organizing, collective bargaining, and labor-management relations applicable
14 to employers engaged in interstate commerce.  It established various rules
15 concerning collective bargaining and defined a series of banned unfair labor
16 practices, including bans on interference with the formation or organization of labor
17 unions by employers. The NLRA does not apply to certain workers, including
18 supervisors, managerial employees and confidential employees – all categories
19 specifically excluded from the Ordinance.

20    22.    The NLRA prohibits state and local regulation of conduct that
21 Congress intended to be left to be controlled by the free-play of economic forces.
22 Legislation that interferes with the "balanced state of collective bargaining" is
23 preempted by the NLRA.  *See Machinists v. Wisconsin Employment Relations*
24 *Comm'n*, 427 U.S. 132 (1976).

25    23.    In particular, the NLRA preempts any and all state and local
26 enactments that, by design or consequence, regulate or interfere with the then-
27 existing balance of economic power between labor and management with respect to
28 zones of activity that, under federal labor law, are intended to be left to the free play

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

of economic forces. Laws subject to NLRA preemption include laws that interfere with or attempt to regulate the economic tools available to labor or management during the course of collective bargaining or that otherwise interfere with the collective bargaining process, such as those that alter the parties' rights and economic alternatives during collective bargaining, or the processes and procedures utilized for union organizing.

24.     Application of the Ordinance to the activities of the Santa Ana Members unequivocally intrudes upon zones of activity in the areas of labor relations, union organizing, and collective bargaining that is reserved under federal labor law and policy to the free play of economic forces.  The Ordinance establishes premium pay standards that, by design or consequence, empower the UFCW or other collective bargaining units to secure a wage rate they could not otherwise have obtained from the employer at a unionized or non-union grocery store. This undermines the collective bargaining process and disrupts the process of union organizing.

25.     While the City has the ability to enact ordinances to further the health and safety of its citizens, the Ordinance here bears no relation to those goals. Local minimum wage laws, for example, seek to lessen the burden on public welfare services. This ordinance is not a minimum labor standard.  It is a mandatory hourly bonus for a specific group of workers, regardless of the wage negotiated in the current collective bargaining agreements or other employment agreements.

26.     The Ordinance is preempted by the NLRA as it regulates zones of activity that Congress intentionally left to be controlled by the free play of economic forces.

27.     The City's application and enforcement of the Ordinance will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and

unenforceable. This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

28.    CGA is entitled to judgment declaring the Ordinance to be void and unenforceable under the Supremacy Clause of the U.S. Constitution and equitable and injunctive relief to prevent the City of Santa Ana or any other private enforcer from attempting to enforce or give effect to the Ordinance.

## SECOND CAUSE OF ACTION

**Declaratory and Injunctive Relief**

**(Equal Protection Clause of the United States Constitution)**

29.    CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 28, inclusive.

30.    CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving Plaintiff's members of the protections afforded to them under the Equal Protection Clause of the U.S. Constitution, which guarantee each and all of them equal protection of the laws.  (U.S. Const., Amend. XIV, § 1). This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

31.    The Equal Protection Clause requires that persons who are similarly situated receive like treatment under the law, and that statutes may single out a class for distinction only if that classification bears a rational relationship to the purpose of the statute.  As such, the City may not irrationally single out one class of individuals for discriminatory treatment.

32.    The Ordinance improperly singles out certain grocery store businesses in Santa Ana for disparate treatment while not requiring the same treatment of similarly situated businesses.  More importantly, the ordinance implicates the Members' fundamental right to be free from unreasonable governmental interference with their contracts, specifically their collective bargaining agreements and other employment agreements.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

33.     The stated purpose of the Ordinance, namely, to protect public health, address economic insecurity, and promote job retention during the COVID-19 emergency by requiring grocery stores to provide premium pay is not rationally related to the discriminatory treatment of CGA's Members.  No significant and legitimate public purpose exists for the Ordinance.  The City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW 324.

34.     By virtue of the foregoing, application of the Ordinance to the CGA's Members within the City violates the equal protection guarantees of the U.S. Constitution.

35.     The City's application and enforcement of the Ordinance will cause Plaintiff's members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable.

## THIRD CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the California Constitution)

36.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 35, inclusive.

37.     CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's members of the protections afforded to them under the Equal Protection Clause of the California Constitution, which like the U.S. Constitution, guarantees each and all of them equal protection of the laws. (Cal. Const., Art. I § 7.)

38.     For the same reasons set forth in Paragraphs 29 through 35 above, the Ordinance violates the Equal Protection Clause of the California.  Such application will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law.

## **FOURTH CAUSE OF ACTION**

### **For Declaratory and Injunctive Relief**

### **(Contracts Clause of the U.S. Constitution)**

39.    CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 38, inclusive.

40.    CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's Members of the protections afforded to them under the Contracts Clause of the U.S. Constitution, which provides in pertinent part that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." (U.S. Const., Art. I, § 10, cl. 1).  The Contract Clause imposes limits upon the power of a State, and Municipalities operating under the color of State law, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.

41.    The Ordinance substantially interferes with Members' contracts, including its collective bargaining agreements with its employees, without any significant or legitimate public purpose. The City's stated objectives are to protect public health, address economic insecurity, and promote job retention.  None of these justifications support this measure, because the City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW.

42.    Even if the City could show a significant and legitimate public purpose behind the regulation, the substantial impairment to the Members' contractual rights and obligations (i.e., the terms of the Members' existing collective bargaining agreements) are neither reasonable nor necessary to fulfill any such public purpose.

43.    By virtue of the foregoing, application of the Ordinance to CGA's members constitutes a substantial and unconstitutional impairment of those

1  members existing contractual relationships that will cause them to suffer irreparable

2  harm for which they have no adequate remedy at law.

3  ### FIFTH CAUSE OF ACTION

4  **Declaratory and Injunctive Relief**

5  **(Contracts Clause of the California Constitution)**

6      44.    CGA incorporate herein by this reference the allegations contained

7  in Paragraphs 1 through 43, inclusive.  Plaintiffs hereby seek declaratory and

8  injunctive relief to prevent the City from violating, and continuing to violate, the

9  Contract Clause of the California Constitution, which provides in pertinent part

10  that: "A ... law impairing the obligation of contracts may not be passed." (Cal.

11  Const., Art. I, § 9.)

12      45.    Like the Federal Contracts Clause, the California Contracts Clause

13  also imposes limits upon the State of California, and its municipalities, to abridge

14  existing contractual relationships, even in the exercise of its otherwise legitimate

15  police power.  For the same reasons set forth in Paragraphs 41 through 43 above,

16  application of the Ordinance to CGA's members within the City constitutes a

17  substantial and unconstitutional impairment of those members existing contractual

18  relationship in violation of the California Contract Clause. Such application will

19  cause those members to suffer irreparable harm for which they have no adequate

20  remedy at law.

21  ### PRAYER FOR RELIEF

22      WHEREFORE, Plaintiff prays for the following relief:

23      1.    On the first cause of action, a judgment declaring that the

24  Ordinance, as well as any act taken in furtherance of the Ordinance by any person,

25  is preempted by the National Labor Relations Act, and its implementing regulations

26  and guidance, and are therefore void and unenforceable, and entering a preliminary

27  and permanent injunction enjoining the City from enforcing or taking any action

28  under the Ordinance;

2. On the second and third causes of action, enter a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, violate state and federal equal protection guarantees, and are therefore void and invalid, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

3. On the fourth and fifth causes of action, enter a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, violate the contracts clauses of the state and federal constitution, and are therefore void and invalid, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

4. For an award of attorneys' fees and costs of suit herein pursuant to California Code of Civil Procedure § 1021.5, 42 U.S.C. §1988, or any other applicable law; and

5. For such other and further relief as the Court may deem just and proper.

Dated: March 16, 2021

MORRISON & FOERSTER LLP

By: _____
William F. Tarantino

Attorneys for Plaintiff
CALIFORNIA GROCERS
ASSOCIATION

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# Exhibit A

ORDINANCE NO. NS-3002

AN UNCODIFIED URGENCY ORDINANCE OF THE CITY
COUNCIL OF THE CITY OF SANTA ANA ESTABLISHING
PREMIUM PAY AND ASSOCIATED LABOR PROTECTIONS
FOR GROCERY AND RETAIL PHARMACY WORKERS
WORKING IN SANTA ANA

### *City Attorney Summary*

*The Urgency Ordinance aims to protect and promote the public health,
safety, and welfare during the COVID-19 emergency by requiring grocery
and retail pharmacy stores to provide premium pay for grocery and retail
pharmacy workers performing work in Santa Ana.*

WHEREAS, the new coronavirus 19 ("COVID-19") disease is caused by a virus
that spreads easily from person to person and may result in serious illness or death, and
is classified by the World Health Organization ("WHO") as a worldwide pandemic; and

WHEREAS, COVID-19 has broadly spread throughout California and remains a
significant health risk to the community, especially members of our most vulnerable
populations; and

WHEREAS, on March 4, 2020, California Governor Gavin Newsom proclaimed a
state of emergency in response to new cases of COVID-19, directing state agencies to
use all resources necessary to prepare for and respond to the outbreak; and

WHEREAS, on March 17, 2020, the City Council approved Resolution No. 2020-
016 proclaiming the existence of a local emergency regarding COVID-19 and authorizing
the City Manager to exercise the emergency powers necessary to take extraordinary
measures to prevent death or injury of persons and to protect the public peace, safety
and welfare; and

WHEREAS, on March 19, 2020, California Governor Gavin Newsom issued a
"Stay Home – Stay Healthy" proclamation closing all non-essential workplaces, requiring
people to stay home except to participate in essential activities or to provide essential
business services, and banning all gatherings for social, spiritual, and recreational
purposes. In addition to healthcare, public health and emergency services, the "Stay
Home – Stay Healthy" proclamation identified grocery and retail pharmacy stores as
essential business sectors critical to protecting the health and well-being of all
Californians and designated their workers as essential critical infrastructure workers; and

WHEREAS, on December 3, 2020, Governor Newsom extended the "Stay Home
– Stay Healthy" proclamation; and

WHEREAS, on January 25, 2021, Governor Newsom lifted the stay-at-home order,
returning California counties back to a "tiered" system; and

WHEREAS, Orange County remains in the most restrictive purple tier, where many non-essential business operations remain closed and the virus widespread; and

WHEREAS, as of February 25, 2021, the WHO Situation Report reported a global total of 112,209,815 confirmed cases of COVID-19, including 2,490,776 deaths; California reported 3,455,361 confirmed cases of COVID-19, including 49,877 deaths; and Santa Ana has reported 43,835 cases of COVID-19, including 688 deaths; and

WHEREAS, grocery and retail pharmacy stores are essential businesses operating in Santa Ana during the COVID-19 emergency, making grocery and retail pharmacy workers highly vulnerable to economic insecurity and health or safety risks; and

WHEREAS, grocery and retail pharmacy workers have been unable to work from home, including those with children engaged in distance learning, and have therefore likely incurred additional childcare expenses; and

WHEREAS, grocery and retail pharmacy workers are essential workers who perform services that are fundamental to the economy and health of the community during the COVID-19 crisis. They work in high risk conditions with inconsistent access to protective equipment and other safety measures; work in public situations with limited ability to engage in physical distancing; and continually expose themselves and the public to the spread of disease; and

WHEREAS, premium pay, paid in addition to regular wages, is an established type of compensation for employees performing hazardous duty or work involving physical hardship that can cause extreme physical discomfort and distress; and

WHEREAS, during the early stages of the COVID-19 pandemic, many grocery companies provided premium pay, which was generally implemented as either a temporary hourly wage increase or a one-time bonus, but this practice has either generally been phased out or terminated; and

WHEREAS, grocery and retail pharmacy workers working during the COVID-19 emergency merit additional compensation because they are performing hazardous duty due to the significant risk of exposure to the COVID-19 virus. Grocery and retail pharmacy workers have been working under these hazardous conditions for months. They are working in these hazardous conditions now and will continue to face safety risks as the virus presents an ongoing threat for an uncertain period, potentially resulting in subsequent waves of infection. Additionally, new and potentially more contagious variants of the coronavirus have now been detected in California; and

WHEREAS, the availability of grocery and retail pharmacy stores is fundamental to the health of the community and is made possible during the COVID-19 emergency because grocery and retail pharmacy workers are on the frontlines of this devastating pandemic supporting public health, safety, and welfare by working in hazardous situations; and

WHEREAS, establishing an immediate requirement for grocery and retail pharmacy stores to provide premium pay to grocery and retail pharmacy workers protects public health, supports stable incomes, and promotes job retention by ensuring that grocery and retail pharmacy workers are compensated for the substantial risks, efforts, and expenses they are undertaking to provide essential services in a safe and reliable manner during the COVID-19 emergency; and

WHEREAS, the City Council finds that this Ordinance is necessary for the preservation of public peace, health, and safety of grocery and retail pharmacy workers working in Santa Ana and finds urgency to approve this Ordinance immediately based on the facts described herein and detailed in the staff report.

NOW, THEREFORE, the City Council of the City of Santa Ana ordains as follows:

**Section 1.** **Incorporation of Recitals.** The findings and determinations reflected above are true and correct, and are incorporated by this reference herein as the cause and foundation for the action taken by and through this Urgency Ordinance.

**Section 2.** **PREMIUM PAY FOR GROCERY AND RETAIL PHARMACY WORKERS**

**Purpose.**

As a result of the COVID-19 pandemic and the "Stay at Home" order issued by California Governor Gavin Newsom, this Ordinance aims to protect and promote the public health, safety, and welfare during the new coronavirus 19 ("COVID-19") emergency by requiring grocery and retail pharmacy stores to provide premium pay for grocery and retail pharmacy workers performing work in Santa Ana. Requiring grocery and retail pharmacy stores to provide premium pay to grocery and retail pharmacy workers compensates grocery and retail pharmacy workers for the risks of working during a pandemic. Grocery and retail pharmacy workers face magnified risks of catching and/or spreading the COVID-19 disease because the nature of their work involves close contact with the public, including members of the public who are not showing symptoms of COVID-19 but who can spread the disease. The provision of premium pay better ensures the retention of these essential workers who are on the frontlines of this pandemic providing essential services and who are needed throughout the duration of the COVID-19 emergency. As such, they are deserving of fair and equitable compensation for their work.

**Short title.**

This Ordinance shall constitute the "Premium Pay for Grocery and Retail Pharmacy Workers Ordinance" and may be cited as such.

**Definitions.**

For purposes of this Ordinance:

"Adverse action" means reducing the compensation to a designated worker, garnishing gratuities, temporarily or permanently denying or limiting access to work, incentives, or bonuses, offering less desirable work, demoting, terminating, deactivating, putting a designated worker on hold status, failing to rehire after a seasonal interruption of work, threatening, penalizing, retaliating, or otherwise discriminating against a designated worker for any reason prohibited by this Ordinance.

"Adverse action" also encompasses any action by the hiring entity or a person acting on the hiring entity's behalf that would dissuade a designated worker from exercising any right afforded by this Ordinance.

"Aggrieved party" means a designated worker or other person who suffers tangible or intangible harm due to a hiring entity or other person's violation of this Ordinance.

"City" means the City of Santa Ana.

"Designated worker" means a grocery worker or retail pharmacy worker employed by a hiring entity who is entitled to premium pay pursuant to this Ordinance.

"Grocery worker" means a worker employed by a hiring entity at a grocery store for hourly compensation, including a worker who has full-time employment, part-time employment, joint employment, temporary employment, or employment through the services of a temporary services or staffing agency.

"Grocery store" means a store that devotes seventy percent (70%) or more of its business to retailing a general range of food products, which may be fresh or packaged, and/or a store that has at least ten thousand square feet (10,000 sf) of floor space dedicated to retailing a general range of food products. There is a rebuttable presumption that if a store receives seventy percent (70%) or more revenue from retailing a general range of food products, or if a store has at least ten thousand square feet (10,000 sf) of floor space dedicated to retailing a general range of food products, then it qualifies as a grocery store.

"Hiring entity" means a grocery store or retail pharmacy that employs over three hundred (300) workers nationally and employs more than fifteen (15) employees per grocery store location or retail pharmacy location in the City of Santa Ana. For purposes of this section, the number of workers counted toward the national total shall encompass all employees who work for compensation, including employees not covered by this Ordinance.

"Premium pay" means cash compensation owed to a designated worker that is in addition to the worker's existing base salary, commissions, tips, gratuities, bonuses, or any other form of payment owed to the worker, including, but not

limited to, any holiday, overtime, or vacation pay, or other benefits such as additional sick leave pay, retirement contributions, or store discounts.

"Respondent" means a grocery store, retail pharmacy, parent company or any person who is alleged or found to have committed a violation of this Ordinance.

"Retail pharmacy" means a corporate or chain (three or more locations nationally) pharmacy or publicly-traded company that is licensed as a pharmacy by the State of California and that dispenses medications to the general public at retail prices. Such term does not include a pharmacy that dispenses prescription medications to patients primarily through the mail, nursing home pharmacies, long-term care facility pharmacies, hospital pharmacies, clinics, charitable or not-for-profit pharmacies, government pharmacies, or pharmacy benefit managers.

"Retail pharmacy worker" means a worker employed by a hiring entity at a retail pharmacy for hourly compensation, including a worker who has full-time employment, part-time employment, joint employment, temporary employment, or employment through the services of a temporary services or staffing agency.

**Designated worker coverage.**

For the purposes of this Ordinance, covered designated workers are limited to those who perform work for a hiring entity where the work is performed in the City of Santa Ana.

**Hiring entity coverage.**

A.  For purposes of this Ordinance, hiring entities are limited to those who employ three hundred (300) or more designated workers nationally and employ more than fifteen (15) employees per grocery store or retail pharmacy location in the City of Santa Ana.

B.  To determine the number of designated workers employed for the current calendar year:

1.  The calculation is based upon the average number per calendar week of designated workers who worked for compensation during the preceding calendar year for any and all weeks during which at least one (1) designated worker worked for compensation. For hiring entities that did not have any designated workers during the preceding calendar year, the number of designated workers employed for the current calendar year is calculated based upon the average number per calendar week of designated workers who worked for compensation during the first ninety (90) calendar days of the current year in which the hiring entity engaged in business.

2. All designated workers who worked for compensation shall be counted, including but not limited to:

(a)   Grocery workers and retail pharmacy workers who are not covered by this Ordinance; and

(b)   Designated workers who worked in Santa Ana.

**Premium pay requirement.**

A. Hiring entities shall provide each designated worker with premium pay consisting of an additional four dollars ($4.00) per hour for each hour worked.

B. Hiring entities shall provide the pay required by this Ordinance for a minimum of one hundred twenty (120) days from the effective date of this Ordinance.

C. If a hiring entity already provides hourly premium pay as of the effective date of this Ordinance, such compensation may be credited towards the additional four dollars per hour of premium pay required by this Ordinance. Accordingly, compliance with this Ordinance may be achieved if a hiring entity provides hourly premium pay in the full amount required by this Ordinance as of the effective date of this Ordinance and for the duration of its effectiveness, provided that all other requirements of this Ordinance are satisfied. In no event shall premium pay provided prior to the effective date of this Ordinance be credited towards the premium pay required by this Ordinance.

D. Unless extended by the City Council, this Ordinance shall expire in one hundred twenty (120) days from its effective date.

**Designated worker and consumer protections.**

A. No hiring entity shall, as a result of this Ordinance going into effect, take any of the following actions:

1. Reduce a designated worker's compensation compensation by reducing the base wage rate, overtime, holiday or other premium pay rate, hours of work, vacation, pension contributions, or other non-wage benefits of any designated worker, or by increasing charges to any designated worker for parking, uniforms, meals, or other work-related materials or equipment;

2. Limit a designated worker's earning capacity.

B. It shall be a violation if this Ordinance is a motivating factor in a hiring entity's decision to take any of the actions immediately above, unless

the hiring entity can prove that its decision to take the action(s) would have happened in the absence of this Ordinance going into effect.

**Notice of rights.**

A. Hiring entities shall provide covered designated workers with a written notice of rights established by this Ordinance. The notice of rights shall be in a form and manner sufficient to inform designated workers of their rights under this Ordinance. The notice of rights shall provide information on:

    1. The right to premium pay guaranteed by this Ordinance;

    2. The right to be protected from retaliation for exercising in good faith the rights protected by this Ordinance; and

    3. The right to bring a civil action for a violation of the requirements of this Ordinance, including a hiring entity's denial of premium pay as required by this Ordinance and a hiring entity or other person's retaliation against a covered designated worker or other person for asserting the right to premium pay or otherwise engaging in an activity protected by this Ordinance.

B. Hiring entities shall provide the notice of rights required by posting a written notice of rights in a location of the grocery store or retail pharmacy location utilized by employees for breaks, and in an electronic format that is readily accessible to the designated workers. The notice of rights shall be made available to the designated workers via smartphone application or an online web portal, in English and any language that the hiring entity knows or has reason to know is the primary language of the designated worker(s).

**Hiring entity records.**

A. Hiring entities shall retain records that document compliance with this Ordinance for covered designated workers.

B. Hiring entities shall retain the records required above for a period of two (2) years.

C. If a hiring entity fails to retain adequate records required under the Ordinance, there shall be a presumption, rebuttable by clear and convincing evidence, that the hiring entity violated this Ordinance for each covered designated worker for whom records were not retained.

**Retaliation prohibited.**

No hiring entity employing a designated worker shall discharge, reduce in compensation, or otherwise discriminate against any designated worker for opposing any practice proscribed by this Ordinance, for participating in proceedings related to this Ordinance, for seeking to exercise their rights under this Ordinance by any lawful means, or for otherwise asserting rights under this Ordinance.

**Violation.**

The failure of any respondent to comply with any requirement imposed on the respondent under this Ordinance is a violation.

**Remedies.**

A. The payment of unpaid compensation, liquidated damages, civil penalties, penalties payable to aggrieved parties, fines, and interest provided under this Ordinance is cumulative and is not intended to be exclusive of any other available remedies, penalties, fines, and procedures.

B. A respondent found to be in violation of this Ordinance for retaliation prohibited by this Ordinance shall be subject to any appropriate relief at law or equity including, but not limited to reinstatement of the aggrieved party, front pay in lieu of reinstatement with full payment of unpaid compensation plus interest in favor of the aggrieved party under the terms of this Ordinance, and liquidated damages in an additional amount of up to twice the unpaid compensation.

**Private right of action.**

Any covered designated worker that suffers financial injury as a result of a violation of this Ordinance, or is the subject of retaliation prohibited by this Ordinance, may bring a civil action in a court of competent jurisdiction against the hiring entity or other person violating this Ordinance and, upon prevailing, may be awarded reasonable attorney's fees and costs and such legal or equitable relief as may be appropriate to remedy the violation including, without limitation: the payment of any unpaid compensation plus interest due to the person and liquidated damages in an additional amount of up to twice the unpaid compensation; and a reasonable penalty payable to any aggrieved party if the aggrieved party was subject to prohibited retaliation.

**Encouragement of more generous policies.**

A. Nothing in this Ordinance shall be construed to discourage or prohibit a hiring entity from the adoption or retention of premium pay policies more generous than the one required herein.

B. Nothing in this Ordinance shall be construed as diminishing the obligation of a hiring entity to comply with any contract or other agreement providing more generous protections to a designated worker than required by this Ordinance.

**Other legal requirements.**

This Ordinance provides minimum requirements for premium pay while working for a hiring entity during the COVID-19 emergency and shall not be construed to preempt, limit, or otherwise affect the applicability of any other law, regulation, requirement, policy, or standard that provides for higher premium pay, or that extends other protections to designated workers; and nothing in this Ordinance shall be interpreted or applied so as to create any power or duty in conflict with federal or state law. Nothing in this Ordinance shall be construed as restricting a designated worker's right to pursue any other remedies at law or equity for violation of their rights.

**Severability.**

The provisions of this Ordinance are declared to be separate and severable. If any clause, sentence, paragraph, subdivision, section, subsection, or portion of this Ordinance, or the application thereof to any hiring entity, designated worker, person, or circumstance, is held to be invalid, it shall not affect the validity of the remainder of this Ordinance, or the validity of its application to other persons or circumstances.

**Exemption for collective bargaining agreement.**

All of the provisions of this Ordinance, or any part thereof, may be expressly waived in a collective bargaining agreement, but only if the waiver is explicitly set forth in the agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute a waiver of all or any of the provisions of this Ordinance.

**No waiver of rights.**

Except for a collective bargaining agreement provision made pursuant to this Ordinance, any waiver by a designated worker of any or all provisions of this Ordinance shall be deemed contrary to public policy and shall be void and unenforceable. Other than in connection with the bona fide negotiation of a collective bargaining agreement, any request by a hiring entity to a designated worker to waive rights given by this Ordinance shall be a violation of this Ordinance.

**Section 3.** **Urgency Findings.** Pursuant to Santa Ana City Charter Sections 415 and 417, this Ordinance is declared by the City Council to be necessary as an emergency measure to protect and preserve the health, safety and welfare of the citizens of the City

of Santa Ana and will become effective immediately if passed by the affirmative votes of at least two-thirds (2/3) of the members of the City Council.  The City Council hereby finds that there is an urgent need to adopt these regulations in order to address the current and immediate threats set forth above.  Given the uncertain and evolving nature of the COVID-19 pandemic, the premium pay and associated protections must be immediately implemented to ensure that grocery and retail pharmacy workers continue working and providing these essential services to the residents of Santa Ana and the region generally. These workers have already been working for many months through this pandemic. Grocery and retail pharmacy workers face magnified risks of catching and/or spreading COVID-19 because the nature of their work involves close contact with the public, including members of the public who are not showing symptoms of COVID-19 but who can still transmit the disease.  The provision of premium pay better ensures the retention of these essential workers who are on the frontlines of this pandemic providing essential services and who are needed throughout the duration of it.  This urgency ordinance is needed during the emergency in the interest of maintaining access to and continuity in essential grocery and pharmacy services.

**Section 4.   CEQA.** The City Council determines that the adoption of this Urgency Ordinance is exempt from environmental review under the California Environmental Quality Act ("CEQA") pursuant to the following provisions of the CEQA Guidelines, 14 California Code of Regulations, Chapter 3: this Urgency Ordinance is exempt under CEQA Guidelines Section 15378(b)(5) in that it is not a "project" under CEQA, and will not result in direct or indirect physical changes in the environment.

**Section 5.   Severability.** If any section or provision of this Urgency Ordinance is for any reason held to be invalid or unconstitutional by any court of competent jurisdiction, or contravened by reason of any preemptive legislation, the remaining sections and/or provisions of this Urgency Ordinance shall remain valid. The City Council hereby declares that it would have adopted this Urgency Ordinance, and each section or provision thereof, regardless of the fact that any one or more section(s) or provision(s) may be declared invalid or unconstitutional or contravened via legislation.

**Section 6.   Adoption, Certification, and Publication.**   The Clerk of the Council shall certify the adoption of this Ordinance and shall cause the same to be published as required by law.

ADOPTED this 2nd day of March 2021.

_____
Vicente Sarmiento
Mayor

APPROVED AS TO FORM:
Sonia R. Carvalho, City Attorney


By: _John M. Funk_____
    John M. Funk
    Sr. Assistant City Attorney




| AYES: | Councilmembers | Bacerra, Hernandez, Lopez, Phan, Sarmiento (5) |
|---|---|---|
| NOES: | Councilmembers | Mendoza, Penaloza (2) |
| ABSTAIN: | Councilmembers | None (0) |
| NOT PRESENT: | Councilmembers | None (0) |


## CERTIFICATE OF ATTESTATION AND ORIGINALITY

I, Daisy Gomez, Clerk of the Council, do hereby attest to and certify the attached Ordinance No. NS-3002 to be the original ordinance adopted by the City Council of the City of Santa Ana on March 2, 2021 and that said ordinance was published in accordance with the Charter of the City of Santa Ana.

Date: _3-3-2021_

_Daisy Gomez_
Daisy Gomez
Clerk of the Council
City of Santa Ana

Ordinance No. NS-3002
Page 11 of 11

# EXHIBIT B

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
William F. Tarantino (CA SBN 215343)
MORRISON & FOERSTER LLP
425 Market Street, San Francisco, CA 94105

TELEPHONE NO.: (415) 268-7000    FAX NO. (Optional): (415) 268-7522
ATTORNEY FOR (Name): California Grocers Association

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

751 W. SANTA ANA BLVD

CASE NAME:
California Grocers Association v. City of Santa Ana

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 30-2021-01189627-CU-MC-CXC |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) / [ ] Limited (Amount demanded is $25,000) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Randall J. Sherman  DEPT.: CX-105 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [ ] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): Five
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: 3/16/2021

William F. Tarantino
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

EXHIBIT C

WILLIAM F. TARANTINO (CA SBN 215343)
WTarantino@mofo.com
KWAN PARK (SBN 306719)
BPark@mofo.com
ROBERT SANDOVAL (SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:  213.892.5200
Facsimile:   213.892.5454

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization,<br><br>                          Plaintiff,<br><br>          v.<br><br>CITY OF SANTA ANA, a charter municipality<br><br>                          Defendant. | Case No. 30-2021-01189627-CU-MC-CXC<br><br>**PROOF OF SERVICE** |

sf-4453180

1

**PROOF OF SERVICE**

2      I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
is 425 Market Street, San Francisco, California  94105-2482.  I am not a party to the within cause,
3 and I am over the age of eighteen years.

4      I further declare that on March 24, 2021, I served a copy of:

5           **COMPLAINT**

6           **CIVIL COVER SHEET**

7           **SUMMONS**

8           **BY ELECTRONIC SERVICE [Code Civ. Proc sec. 1010.6; CRC 2.251]** by
            electronically mailing a true and correct copy through Morrison & Foerster LLP's
9           electronic mail system from kmarttila@mofo.com at 1:00 p.m. PDT to the email
            address(es) set  forth below, or as stated on the attached service list per agreement in
10          accordance with Code of Civil Procedure section 1010.6 and CRC Rule 2.251.

11
            Clerk of the Council
12          Daisy Gomez
            20 Civic Center Plaza,
13          Santa Ana,CA 92702
            CityClerk@santa-ana.org
14          Tel: (714) 647-6520
            Fax: (714) 647-6956
15

16      I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
17
        Executed at Chicago, Illinois, this 24th day of March, 2021.
18

19

20

21          _____          _____
                  Kristin M. Marttila
22                   (typed)                              (signature)

23

24

25

26

27

28

sf-4453180                              2

PROOF OF SERVICE